## EMILY WOODWARD *vs.* JOHN B. SHAW.

On the trial of a bastardy complaint, the admissions of the respondent that he was the father of the child, and his promise to marry the mother, although not of themselves sufficient to sustain the prosecution, may be given in evidence in corroboration of the testimony of the complainant.

The provision in the statute, that the mother of the bastard child " shall be constant in such accusation," refers only to the man accused; and a variance as to the time, place, or circumstances stated in her accusation, goes to her credit, but not to her competency.

Under the bastardy act, it is not necessary that the complaint and the examination should be separate instruments.

If a certified copy of a paper be used at the trial in the District Court, when the original was the legal evidence, *without objection from the opposing party*, no advantage can be taken of it in this court, on exceptions to the rulings of the District Judge on other points.

EXCEPTIONS from the C. C. Pleas, REDINGTON J. presiding.

Complaint under *st.* 1821, *c.* 72, for the maintenance of bastard children. The declaration alleged that the complainant was delivered of a child, *Oct.* 13, 1837, which was begotten on or about the 1st of *May*, 1837, in the sitting room of *Daniel Woodward*, in *Augusta*. " The complaint and voluntary examination and accusation," was taken by a magistrate on *Oct.* 6, 1837, and was in one paper, signed and sworn to but once, and alleged the facts as stated in the declaration. A certified copy of the examination was introduced in evidence. No objection was made at the trial to the admission of this copy. The counsel for the respondent contended, that the *complaint must* be a separate document from the accusation and examination, and that both should be introduced on the trial. The Judge ruled, that it was unnecessary that they should be separate instruments. The attending physician was examined, and testified that the child, at its birth, was full grown, and stated that in some females the course of nature was not changed for some months after conception, and that such would not for months, know when pregnancy had taken place. The respondent contended, that the complainant was not a competent witness under the circumstances. She was admitted to testify, and stated that the child was begotten in the bedroom adjoining the kitchen in *Daniel Woodward's* house the first of *Febuary*, 1837, and afterwards said it was about that

time. She stated that the course of nature continued until about the first of *May*, and then stopped, and that her mistake arose from that cause. The counsel for the respondent then contended, that owing to the wide variance between her present and former statement, and the impossibility of the occurrence stated by her in her examination to have taken place in *May*, she ought not to be allowed to give her testimony. The objection was overruled. Two brothers of the complainant testified, that in *September*, 1837, the respondent admitted to them, that he was the father of the child, and expressed his willingness to marry the complainant, and procured one of them to cause the intentions of marriage to be published, which was done.

The Judge ruled, that the admissions, if believed, were not of themselves sufficient evidence to sustain the prosecution, but that they might be used in corroboration of the testimony of the complainant. He instructed the jury, that the part of the statute which relates to the complainant's being constant in her accusation, refers only to the man accused, and not to the time or place or other circumstances stated in her accusation; and that such variance may properly be considered by the jury, as affecting her credibility; that they are to judge of the degrees of credit to be given to her under such circumstances; and that if they believed her testimony as to the defendant's being the father of the child, they would find for her; and otherwise for the respondent.

The verdict was against the respondent, and he filed exceptions.

*H. W. Fuller, Jr.*, for the respondent, said, that to sustain the prosecution, the complainant must pursue the statute strictly; that they partake of both a civil and criminal process; that they sound in damages and convict of crime; that they become records of guilt, while under *st.* 1838, *c.* 338, they make a lawful heir to the property of the respondent.

He contended, that the complaint and accusation should be separate and distinct acts, and should be separate papers.

That the copy was erroneously used instead of the original. She was bound to introduce the original paper.

That a material variance in time and place breaks up the allegation of constancy. The allegation of constancy refers not only

to the man accused, but to the time and place and other circumstances. She ought not to have been permitted to testify.

But when admitted, her evidence did not support the declaration. The transaction was different in time and place, and constituted an entirely different charge. No action or complaint can be sustained, unless the facts as alleged are proved, and are such as to constitute a good cause of action. 1 *Stark. N. P. Cas.* 67 ; 1 *Saund.* 259 ; 2 *B. & P.* 155 ; 4 *East,* 343 ; 13 *Petersdorff,* 369 ; *Yelv.* 93 ; 1 *T. R.* 316 ; 5 *East,* 244 ; 2 *Ld. Raym.* 994 ; 8 *East,* 193 ; 12 *East,* 550. The true rule is, that while the complainant shall not be held to prove the precise day alleged, she must allege and prove a day within the limits of physical possibility, and cannot change the venue or give evidence of any other connexion. Having made that time and place a part of the description of the event, she must abide by it. The respondent had notice of no other. *State* v. *Noble,* 3 *Shepl.* 476.

*Vose* and *Lancaster,* for the complainant, contended, that the complaint, examination and accusation, were the same, or rather were in one instrument. This was precisely the form in *Davis'* Justice.

If there was any objection to the use of the copy, it should have been made at the trial. It was not a point made there, and is not now open.

As to the objection, that she was permitted to explain why she made a mistake as to time, have always understood that want of constancy applies only to the *person charged,* and not to the time or place. And even constancy as to the person is applicable only to the time after the examination has taken place. *Maxwell* v. *Hardy,* 8 *Pick.* 560.

The opinion of the Court was drawn up by

EMERY J. — Possibly the course of decisions on questions of law, raised in cases of bastardy, may have gone quite as far against the deductions to be made by juries, as they ought to proceed, but probably not further than they should, in order to prevent an undue influence of sympathy with the deserted and unfortunate female.

Whenever exceptions are presented, it is not for the Court to run out in a crusade after any omission of some supposed material

allegation which the ingenuity of counsel may illicit upon a very hypercritical examination. The Court must confine their attention to the exceptions only as they come up, and naturally from the Court before whom the jury trial was conducted. For it might well be concluded, that had objection been made in season, a motion to amend or producing an original instead of a copy might have done away the semblance of any well grounded dissatisfaction. No objection was made to the introduction of the copy. We cannot fail to reflect, that there may be facilities for association, in a continued courtship, which the jury could understand and appreciate, and in the details of the evidence a conviction in their minds follow, that the truth had been communicated by the complainant with all convenient and just particularity of time, and place and circumstance, including all active and passive agency of which the subject was capable in its developement.

It is true, that courts will take notice of the ordinary course of nature. And so will jurors. But it is peculiarly the duty of the latter, to settle the virtue and extent of seeming exceptions, and one ingredient in coming to a right estimation on this point may be the evidence of the consciousness of the defendant, as demonstrated by his admission, that no injustice was done to him, by the designation of the complainant that he was the man, who had given her occasion to remember him, in this matter, and his willingness to marry her. If inaccurate as to time and place it might be a subject of argument and commentary to the jury and justly, but if the constancy in the accusation as to the man, was maintained, and the jury should be satisfied of its justness, notwithstanding a faintness of disclosure or recollection of the precise day and hour, it would be doing violence to the object of the statute, which is to procure a right application upon the verdict of a jury, for the Court to set the conclusion of the jury all aside, upon such grounds as have been suggested in the argument upon these exceptions. The reason of her mistake seems to be not unnatural, according to the testimony of the physician.

It is objected that there should be a separate paper for the complaint, and examination. The statute makes no such precise provision.

As to the affect of the statute, *c.* 338, passed *March* 22, 1838,

making the product of the illicit connection an heir, it is such a consequence as the legislature have seen fit to create. Whether it be really calculated to produce a deeper respect for the marriage relation, time alone can determine. It is at least an experiment to do some justice to an unoffending being, brought into the world by the the ardent original efficiency of man, not under the sanction of the marriage, covenant. How far the hope of providing for the offspring of the woman may affect her credibility is also a subject for the consideration of the jury. It constitutes no reason for additional security of construction as to the proceedings.

*Exceptions overruled*